**FILED**

lfs        **AUG 2 0 2002**

AT 8:30_____M
**WILLIAM T. WALSH**
**CLERK**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
-------------------------------x
UNITED STATES OF AMERICA        :    Crim. No. 02-638(JCL)
                                :
                                :    18 U.S.C. §§ 371, 982,
            v.                  :    1589, 1590, 1594, 1951
                                :    and 2.
                                :
LEV TRAKHTENBERG,               :
VIKTORIYA I'LINA,               :    I N D I C T M E N T
and                             :
SERGEY MALCHIKOV                :
                                :
-------------------------------x
```

The Grand Jury, in and for the District of New Jersey,

sitting at Newark, charges that:

### COUNT 1

(Conspiracy)

#### Introduction

1.    LEV TRAKHTENBERG was the President of DGL

Enterprises, Inc., a purported entertainment, education, and

travel company with offices in Brooklyn, New York and Moscow,

Russia.   LEV TRAKHTENBERG is a naturalized citizen of the United

States and was the husband of VIKTORIYA I'LINA.

2.    VIKTORIYA I'LINA is a naturalized citizen of the

United States and was the wife of LEV TRAKHTENBERG.

3.    SERGEY MALCHIKOV is a Russian national.

1

### The Conspiracy

4.    From in or about November 1999 and continuing
through the date of this Indictment, in the District of New
Jersey, and elsewhere, defendants

LEV TRAKHTENBERG,
VIKTORIYA I'LINA,
and
SERGEY MALCHIKOV

did knowingly and wilfully conspire and agree with one another
and others to commit the following offenses against the United
States:

a.    to present visa applications, affidavits, and other
documents required by the immigration laws and regulations,
including P-1 and P-3 petitions for non-immigrant workers, which
contained false statements with respect to material facts which
the defendants knew to be false, to wit: that the purpose of the
applicants' visits or extensions were to perform in a scheduled
tour as an integral part of an internationally recognized and
culturally unique Russian show group, when in fact, defendants
intended for these women to dance in the nude at strip clubs,
contrary to Title 18, United States Code, Section 1546(a);

b.    to provide and obtain the labor and services of
Russian women by means of a scheme, plan and pattern intended to

2

cause them to believe that if they did not perform such labor and services, they and others would suffer serious harm and physical restraint, contrary to Title 18, United States Code, Section 1589; and

c. to encourage and induce aliens to come to, enter, and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry, and residence was and would be in violation of law, for the purpose of commercial advantage and private financial gain, contrary to Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324 (a)(1)(B)(i).

## Manner and Means

5. It was part of the conspiracy that defendant LEV TRAKHTENBERG would travel to Russia and with others to lure Russian women to come to the United States with the promise that they would make significant sums of money dancing in strip clubs.

6. It was further part of the conspiracy that defendant LEV TRAKHTENBERG and others would mislead the Russian women with respect to the lascivious nature of the dancing that they would be required to perform.

7. It was further part of the conspiracy that defendant LEV TRAKHTENBERG and others would mislead the Russian

women with respect to the circumstances under which they would be housed in the United States.

8.   It was further part of the conspiracy that defendant LEV TRAKHTENBERG and others would mislead the Russian women with the regard to the amount of money they would be able to keep for the benefit of their families and themselves.

9.   It was further part of the conspiracy that defendant LEV TRAHKTENBERG and others would require the Russian women to furnish detailed "emergency" contact information with regard to their family members in Russia, which information defendants LEV TRAKHTENBERG, VIKTORIYA I'LINA, and SERGEY MALCHIKOV later used in the United States to threaten the Russian women and their families, and to prevent the Russian women from leaving the defendants' control.

10.   It was further part of the conspiracy that defendant LEV TRAKHTENBERG, through his company DGL Enterprises, Inc., would file, and cause to be filed, visa applications, including P-1 and P-3 petitions for non-immigrant workers, on behalf of the Russian women alleging that they held certain positions with Russian show groups which groups were alleged to be internationally recognized or culturally unique, when in fact these women were never associated with these show groups and did

4

not have the musical talents or skills represented in the various petitions.

11. It was further part of the conspiracy that defendant LEV TRAKHTENBERG would file, and caused to be filed, itineraries in support of the various visa applications which stated that the Russian show groups were scheduled to perform at numerous venues around the United States, when in fact, no such concert dates had been scheduled.

12. It was further part of the conspiracy that defendant LEV TRAKHTENBERG would arrange for certain Russian women to receive J-1 exchange visitor visas which provided that they would be "Visiting Specialists at the Department of Performing Arts" at the University of Illinois, at Chicago, when in fact, defendant LEV TRAKHTENBERG never intended or expected the women to teach, attend, or perform at the University.

13. It was further part of the conspiracy that when the women arrived at John F. Kennedy Airport in New York, they would be met by defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA and taken to one of several sparsely furnished apartments that defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA maintained in Brooklyn, New York.

14. It was further part of the conspiracy that once the Russian women were placed in one of the Brooklyn apartments, defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA would confiscate their passports, visas, and return plane tickets in order to isolate and control them.

15. It was further part of the conspiracy that shortly after the Russian women arrived in the United States, defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA would send them to work at nude dancing establishments located in New Jersey.

16. It was further part of the conspiracy that defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA typically required the Russian women to work at the nude dancing establishments six days a week, eight to ten hours a day, with only one additional day off a month.

17. It was further part of the conspiracy that defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA typically required the Russian women to pay them $1,200 a week, representing a payment of $200 a day for the six-day work week, regardless of whether the women had in fact earned sufficient money in a given week for nude dancing at establishments in New Jersey.

6

18. It was further part of the conspiracy that defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA required the Russian women to pay them $200 a day even when they were unable to work due to fatigue or illness.

19. It was further part of the conspiracy that when the Russian women were unable to make payments to defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA in a given week, the amount of unpaid money was added to the money defendants expected to be paid the following week.

20. It was further part of the conspiracy that the Russian women would be transported by van back and forth from the apartments in Brooklyn to the nude dancing establishments in New Jersey by defendant SERGEY MALCHIKOV, among other drivers.

21. It was further part of the conspiracy that when the Russian women complained about the nature of the work they were required to perform and the fact that they were making insufficient money for themselves, defendants LEV TRAKHTENBERG, VIKTORIYA I'LINA and SERGEY MALCHIKOV would remind the Russian women that they had contact numbers and addresses for their children and other relatives who resided in Russia, thereby implicitly threatening them.

22. It was further part of the conspiracy that when

7

any of the Russian women sought to leave the control of defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA they were told that their passports, visas, and return airplane tickets would not be returned unless they paid thousands of dollars to the defendants.

23. It was further part of the conspiracy that when the Russian women failed to pay the amounts of money demanded by defendants LEV TRAKHTENBERG, VIKTORIYA I'LINA, and SERGEY MALCHIKOV, the defendants threatened the women that harm would befall them and their families.

24. It was further part of the conspiracy that when the Russian women failed to pay the thousands of dollars that defendants LEV TRAKHTENBERG, VIKTORIYA I'LINA, and SERGEY MALCHIKOV demanded, defendants conveyed to the women that the money was owed to organized crime associates in Russia who would seek retribution against the women and their families in Russia.

## Overt Acts

In furtherance of the conspiracy and to effect its unlawful objects, the following overt acts were committed in the District of New Jersey, and elsewhere:

25. On or about November 16, 1999, defendant LEV TRAKHTENBERG caused to be filed with the Immigration and

Naturalization Service ("I.N.S.") EAC-00-036-51901, a non-immigrant P-1 petition, which sought to obtain a visa for T.L. on the basis that she was, and had been, for more than one year, an integral member of the Gurchenko Show Group and that T.L. possessed certain musical skills and talents.

26.  On or about March 7, 2000, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-00-116-50024, a non-immigrant P-1 petition, which sought to extend the visa for T.L. on the basis that she was, and had been, for more than one year, an integral member of the Gurchenko Show Group and that T.L. possessed certain musical skills and talents.

27.  On or about March 13, 2000, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-00-119-51184, a non-immigrant P-1 petition, which sought visas for V.G., M.P., and V.M. on the basis that they were, and had been, for more than one year, integral members of the Boyanova Show Group, which was purported to be internationally recognized and that they possessed certain musical skills and talents.

28.  On or about July 14, 2000, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-00-226-50264, a non-immigrant P-1 petition, which sought to extend the visas for V.G., M.P., and V.M. on the basis that they were, and had

been, for more than one year, integral members of the Boyanova Show Group, which was purported to be internationally recognized, and that they possessed certain musical skills and talents.

29. On or about July 26, 2000, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-00-236-53790, a non-immigrant P-1 petition, which sought visas for T.L., N.V., E.O., M.J., O.P., I.B., and E.P. on the basis that they were, and had been, for more than one year, integral members of the Gurchenko Show Group and that they possessed certain musical skills and talents.

30. On or about August 18, 2000, defendant LEV TRAKHTENBERG caused his attorney to send a letter to the I.N.S. which falsely stated that the tour of the Gurchenko Show Group had been cancelled due to a conflict in schedule, and that all the members of the show group had left the United States with the exception of N.V., E.O., M.J., and I.B.

31. In or about August 2000, when O.P. expressed reluctance to pay defendant SERGEY MALCHIKOV the weekly $1,200 payment owed to defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA, defendant SERGEY MALCHIKOV warned O.P. that he could cause harm to her family in Russia.

32.   A few months after the incident referred to in
Paragraph 31, above, defendant SERGEY MALCHIKOV told O.P. that
since she had no passport and no one in the United States, he
could kill her and no one would ever know.

33.   On or about November 13, 2000, defendant LEV
TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-033-52062,
a non-immigrant P-1 petition, which sought visas for V.G., E.R.,
S.L., N.T., and T.R., on the basis that they were, and had been,
for more than one year, integral members of the Gurchenko Show
Group and that they possessed certain musical skills and talents.

34.   On or about November 27, 2000, defendant LEV
TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-044-53253,
a non-immigrant P-1 application, which sought to extend the visas
for M.P. and V.M. on the basis that they were, and had been, for
more than one year, integral members of the Boyanova Singing
Group, which was purported to be internationally recognized, and
that they possessed certain musical skills and talents.

35.   On or about November 27, 2000, defendant LEV
TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-044-53456,
a non-immigrant P-1 application, which sought to extend the visas
for T.L., E.P., and O.P. on the basis that they were, and had
been, for more than one year, integral members of the Gurchenko

11

Show Group and that they possessed certain musical skills and talents.

36. On or about March 27, 2001, defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA met O.P. and O.B. at John F. Kennedy Airport and transported them to two of the apartments maintained by defendants in Brooklyn, New York.

37. On or about April 2, 2001, defendants LEV TRAKHTENBERG, VIKTORIYA I'LINA, and SERGEY MALCHIKOV removed T.R. from one of the Brooklyn apartments, transported her to John F. Kennedy Airport and attempted to place her on a return flight to Russia.

38. On or about April 26, 2001, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-176-53753, a non-immigrant P-1 petition, seeking to extend the visas for V.G., E.R., and S.L. on the basis that they were, and had been, for more than one year, integral members of the Gurchenko Show Group and that they possessed certain musical skills and talents.

39. On or about May 20, 2001, defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA insisted that O.B. pay $5,200 or they would not return her passport.

40. On or about May 23, 2001, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-184-53918,

12

a non-immigrant P-3 petition, seeking a visa for E.P., claiming that she was an actress with the Voronezh Koltsov Drama Theater.

41. On or about June 14, 2001, defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA advised N.T. that they had cancelled her visa and that she owed them money despite the fact that she had already paid them approximately $25,000.

42. On or about June 19, 2001, defendant VIKTORIYA I'LINA advised O.P. that her passport would not be returned until she paid $2,600.

43. On or about June 21, 2001, defendant LEV TRAKHTENBERG directed O.B. to make arrangements with defendant SERGEY MALCHIKOV to pay the $5,200 and inferred that MALCHIKOV was tied to organized crime associates in Russia.

44. On or about June 21, 2001, defendant SERGEY MALCHIKOV made implied threats to O.B. when he (a) advised that he had ordered photographs of other women who had left defendants LEV TRAKHTENBERG and VIKTORIYA I'LINA, and suggested to O.B. that the photographs showed that the women had been beaten; and (b) cautioned O.B. that they knew where her mother lived.

45. On or about June 24, 2001, defendant SERGEY MALCHIKOV informed O.P. that she must send $2,600 to people in Voronezh, Russia if she wanted her passport back.

13

46. On or about June 25, 2001, O.B. met with defendant SERGEY MALCHIKOV and paid him $500. Defendant SERGEY MALCHIKOV warned that (a) O.B. would not be able to avoid paying the full amount of $5,200; (b) that it was better to do it right away because they would take the money anyway; and (c) there were many people in Voronezh, Russia, who have criminal records and would do anything for $100.

47. On or about August 21, 2001, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. EAC-01-254-52122, a non-immigrant P-3 petition seeking a visa for V.G., claiming that she was an actress with the Moscow South West Theater.

48. On or about December 13, 2001, defendant LEV TRAKHTENBERG caused to be filed with the I.N.S. E.A.C.-02-065-52795, a non-immigrant P-1 petition seeking to extend the visas for S.L. and E.R., on the basis that they were, and had been, for more than one year, integral members of the Gurchenko Show Group and that they possessed certain musical talents or skills.

All in violation of Title 18, United States Code, Section 371.

14

## COUNTS 2 THROUGH 6

(Forced Labor)

49.  From in or about and between the dates listed below as to each count, in the District of New Jersey, and elsewhere, defendants

LEV TRAKHTENBERG,
VIKTORIYA I'LINA,
and
SERGEY MALCHIKOV

did knowingly and wilfully attempt to provide and obtain the labor and services of another person, namely the Russian women identified below by their initials, by means of a scheme, plan, and pattern intended to cause that person to believe that, if the person did not perform such labor and services, that person and other persons would suffer serious physical harm and physical restraint:

| Count | Victim | Approximate Dates |
|-------|--------|-------------------|
| 2 | T.R. | January 2001 to April 2001 |
| 3 | O.B. | March 2001 to August 2001 |
| 4 | O.P. | October 28, 2000 to December 2000 |
| 5 | O.P. | March 2001 to October 2001 |
| 6 | N.T. | January 2001 to July 2001 |

In violation of Title 18, United States Code, Sections 1589(2), 1594(a), and 2.

15

## COUNTS 7 THROUGH 11

(Trafficking with Respect to Forced Labor)

50.   From in or about and between the dates listed below as to each count, in the District of New Jersey, and elsewhere, defendants

LEV TRAKHTENBERG,
VIKTORIYA I'LINA,
and
SERGEY MALCHIKOV

did knowingly and wilfully recruit, harbor, transport, provide, and obtain by any means the labor and services of the persons identified below by initials contrary to Title 18, United States Code, Section 1589:

| Count | Victim | Approximate Dates |
|-------|--------|-------------------|
| 7 | T.R. | November 2000 to April 2001 |
| 8 | O.B. | November 2000 to May 2001 |
| 9 | O.P. | October 28, 2000 to December 2000 |
| 10 | O.P. | February 2001 to June 2001 |
| 11 | N.T. | November 2000 to June 2001 |

In violation of Title 18, United States Code, Sections 1590 and 2.

16

## COUNT 12

(Conspiracy to Commit Extortion)

51.    Between in or about March 2001 and October 2001, in the District of New Jersey, and elsewhere, defendants

LEV TRAKHTENBERG,
VIKTORIYA I'LINA,
and
SERGEY MALCHIKOV

did knowingly and wilfully conspire with one another and others to obstruct, delay and affect commerce and the movement of an article and commodity in commerce, by extortion, that is, by obtaining the property of O.B. and O.P., with their consent, induced by the wrongful use of actual and threatened force, violence, and fear.

In violation of Title 18, United States Code, Section 1951.

17

## FORFEITURE ALLEGATION ONE

52. The allegations in Counts 2 through 6 (Forced Labor, in violation of 18 U.S.C. § 1589), and Counts 7 through 11 (Trafficking in Forced Labor, in violation of 18 U.S.C. § 1590), are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1594(b).

53. Pursuant to the provisions of Title 18, United States Code, Section 1594(b), each defendant who is convicted of one or more of the offenses set forth in Counts 2 through 6 and Counts 7 through 11 shall forfeit to the United States any and all right, title, and interest they may have in any property real and personal:

a. that was used and intended to be used to commit and facilitate the commission of a violation of Title 18, United States Code, Sections 1589 and 1590; and

b. constituting and derived from, any proceeds that any defendant obtained, directly and indirectly, as a result of a violation of Title 18, United States Code, Sections 1589 and 1590.

18

## FORFEITURE ALLEGATION TWO

54. The allegations in Count One with respect to Conspiracy to commit Visa Fraud, contrary to 18 U.S.C. § 1546, and Induce Aliens to Enter the United States, contrary to 8 U.S.C. §1324(a), are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 982(a)(6)(A).

55. Pursuant to the provisions of Title 18, United States Code, Section 982(a)(6)(A), each defendant who is convicted of conspiring to commit a violation of Title 18, United States Code, Section 1546 and Title 8, United States Code, Section 1324(a) shall forfeit to the United States any and all right, title, and interest they may have in:

a. any conveyance, including any vessel, vehicle, and aircraft, used in the commission of the conspiracy to violate Title 18, United States Code, Section 1546 and Title 8, United States Code, Section 1324(a);

b. any property, real and personal, that constitutes, and is derived from and is traceable to the proceeds obtained directly and indirectly from the commission of the conspiracy to violate Title 18, United States Code, Section 1546 and Title 18, United States Code, Section 1324(a);

19

c.   any property, real and personal, that was used to facilitate, and was intended to be used to facilitate, the commission of the conspiracy to violate Title 18, United States Code, Section 1546 and Title 18, United States Code, Section 1324(a).

56.   If any of the above-described property, which is forfeitable pursuant to Title 18, United States Code, Section 982(a)(6)(A), as a result of acts and omissions of any defendant:

a.   cannot by located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third person;

c.   has been substantially diminished in value; or

d.   has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property under the provisions of Title 21, United

States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b).

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY

21

CASE NUMBER:_____

---

**United States District Court**
**District of New Jersey**

---

# UNITED STATES OF AMERICA

## v.

## LEV TRAKHTENBERG,
## VIKTORIYA I'LINA, and
## SERGEY MALCHIKOV

---

## INDICTMENT FOR

**18 U.S.C. §§ 371, 982,**
**1589, 1590, 1592, 1594,**
**1951 and 2**

---

## CHRISTOPHER J. CHRISTIE
*U.S. ATTORNEY NEWARK, NEW JERSEY*

---

## LESLIE F. SCHWARTZ
*Assistant U.S. Attorney*
*NEWARK, New Jersey*