

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

---

*Leslie F. Schwartz*  
*Assistant United States Attorney*

*970 Broad Street, Suite 700*  
*Newark, New Jersey 07102*

*Direct Dial: (973) 645-3986*

July 27, 2021

**VIA ECF**
Honorable Madeline Cox Arleo
United States District Court
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

    Re:   <u>United States v. Viktoriya I'lina</u>
           Crim. No. 02-638

Dear Judge Arleo:

    The Government submits this letter brief in lieu of a more formal submission opposing the petition of Viktoriya I'lina ("I'lina") for expungement of her criminal record.

    For the reasons set forth below, the Government respectfully submits that, based on well-established Third Circuit precedent, this Court lacks jurisdiction to entertain I'lina's petition, and therefore, I'lina's petition for expungement should be dismissed.

## BACKGROUND

    On August 20, 2002, a federal grand jury, sitting in Newark, New Jersey returned a twelve-count indictment charging I'lina, Lev Trakhtenberg, and Sergey Malchikov with conspiracy to commit forced labor, immigration violations, and visa fraud, as well as substantive counts of forced labor, trafficking, and conspiracy to commit extortion against O.P. and O.B.  *See* Criminal Indictment, No. 02-638, submitted as Exhibit "A".

    On January 3, 2006, I'lina pleaded guilty to conspiring to commit visa fraud and to unlawfully bringing in and harboring unlawful aliens for commercial gain, in violation of 18 U.S.C. Section 371 (Count One, paragraphs 4a and 4c), and conspiring to commit extortion against O.P. and O.B., in violation of 18 U.S.C. Section 1951 (Count Twelve).  On August 6, 2006, the Honorable John C. Lifland, U.S.D.J. sentenced I'lina to 48 months'

imprisonment on each of Counts One and Twelve, to be served concurrently, followed by three years' supervised release, and forfeiture of $25,575.[1]

The criminal conduct underlying I'lina's convictions was serious. I'lina conspired to commit visa fraud and immigration violations by bringing more than twenty-five Russian women into this country to dance in strip clubs on fraudulent visa applications which alleged that the women were part of cultural dance groups or student programs. The Russian women, who had been promised they would make significant sums of money, were typically required to work at the nude dancing establishments six days a week, eight to ten hours a day, with only one additional day off a month. In addition, the women were required to pay the defendants $200 a day for the six-day work week regardless of whether they had missed work due to sickness or fatigue or had in fact earned sufficient money in a given week. *See* Exhibit "A," ¶¶ 10-12, 15-19.

In addition, I'lina conspired to extort O.P. and O.B., two of the women illegally trafficked into the United States. As part of that extortion conspiracy, I'lina, Trakhtenberg, and Malchikov demanded large sums of money from O.P. and O.B. when these women refused to continue working in strip clubs for the defendants. When the demanded payments were not met, the defendants resorted to implicit and direct threats to achieve their ends including threatening the women and their families with serious injury or retaliation by Russian organized crime. These threats had added weight as the defendants reminded the women that the defendants had previously acquired contact numbers and addresses for the women's family members. The defendants further sought to exercise control over the women by maintaining possession, and refusing to return, their passports, visas, and airplane tickets. See Exhibit "A," ¶¶ 21-24.

In her current petition, I'lina argues that the court should expunge her conviction for these significant crimes because "[f]ourteen (14) years have passed since [her] conviction", "she has paid for her mistake in full" and "she has not been able to find any job in a world outside of a group of . . . loyal friends since [she] was released from prison, despite [her] qualifications." *See* I'lina, Crim. No. 02-638, ECF No. 171. Because these arguments fail to provide any cognizable

---

[1] At the time of I'lina's plea, her co-defendants had previously pleaded guilty and been sentenced. In particular, in December 2004, Trakhtenberg pleaded guilty to Count One of the indictment, including charges that he conspired to commit forced labor, visa fraud, and immigration violations and was sentenced in June 2005 to 60 months' imprisonment, three years' supervised release, $66,380 in restitution, and the forfeiture of $25,575. In August 2004, Malchikov pleaded guilty to Count One of the indictment and was sentenced in July 2005 to 45 months' imprisonment, followed by three years' supervised release.

basis for expungement, this Court lacks jurisdiction to entertain I'lina's petition. Accordingly, I'lina's petition for expungement should be dismissed.

## ARGUMENT

### A. This Court Only Has Jurisdiction Over Expungement Petitions in Narrow Circumstances.

The Third Circuit has explicitly held that a district court only has jurisdiction over petitions for expungement in "certain narrow circumstances," including when (i) the petitioner claims the underlying criminal proceedings were invalid or illegal; or (ii) a specific statute authorizes the expungement. *United States v. Rowlands*, 451 F.3d 173, 176-177 (3d Cir. 2006); *see also United States v. Dunegan*, 251 F.3d 477, 480 (3d Cir. 2001) (holding that "in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal.").

In *United States v. Dunegan*, 251 F.3d 477 (3d Cir. 2001), a police officer who had been acquitted of violating a suspect's civil rights in a 1971 accidental shooting brought a petition to expunge the records of the criminal proceedings against him approximately 30 years later. *Id.* at 477. This Court denied his motion on the merits, concluding that he "had failed to allege any extraordinary circumstances justifying expungement." *Id.* at 478. On appeal, the Third Circuit vacated this Court's order and remanded for dismissal for lack of jurisdiction. *Id.* In rejecting Dunegan's claim that expungement was authorized by "the inherent powers of the court," the Third Circuit explained that "[t]he inherent powers of the federal courts are limited and difficult to define with precision," and therefore "must be exercised with restraint and discretion." *Id.* at 478 (citation omitted). After reviewing the traditional uses of inherent power, the *Dunegan* Court concluded that such power "does not provide courts with jurisdiction independently to consider petitions for expungement." *Id.*

In addition, the Third Circuit in *Dunegan* further considered whether the related doctrine of "ancillary jurisdiction" might permit expungement. After reviewing the relevant case law, including the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994), the Third Circuit concluded that ancillary jurisdiction also provided no basis for expungement of a lawful and valid conviction, holding "that in the absence of any applicable statute enacted by Congress, or an allegation that the criminal proceedings were invalid or illegal, a District Court does not have the jurisdiction to expunge a criminal record, even when ending in an acquittal." *Id.* at 479-80.

In *United States v. Rowlands*, 451 F.3d 173 (3d Cir. 2006), the defendant had been convicted in 1982 of conspiracy to obstruct and delay interstate commerce, extortion, and attempting to influence and obstruct a grand jury

investigation related to bribes he received as an elected official. *Id.* at 175. In 2005, Rowlands petitioned the district court in New Jersey for an expungement of his criminal record arguing that it precluded him from being certified as a teacher. *Id.* at 176. The court dismissed the petition for lack of jurisdiction. *Id.* at 174. Rowlands subsequently filed a timely appeal, arguing that the Court had jurisdiction to expunge his record pursuant to its "inherent equitable power" and "the All Writs Act." *Id.*

On appeal, the Third Circuit affirmed this Court's dismissal of the Rowland's petition for expungement, stating that "our precedent clearly establishes that we have jurisdiction over petitions for expungement only when the validity of the underlying criminal proceeding is challenged" or when an "applicable statute enacted by Congress" authorizes it. *Id.* at 178. The Third Circuit further noted that the All Writs Act does not provide an independent basis for jurisdiction and therefore does "nothing to alter our conclusion." *Id.*

**B. This Court Lacks Jurisdiction Over I'lina's Petition.**

In the present matter, this Court lacks jurisdiction to consider I'lina's petition because, as required by Third Circuit precedent, she has not asserted that the underlying criminal proceedings were invalid or illegal or that a specific statute authorizes the expungement of her criminal conviction. *See* I'lina, Crim. No. 02-638, ECF No. 171.

With respect to the criminal proceedings, I'lina makes no claim and provides no evidence, nor could she, that the proceedings against her were "invalid or illegal." *See id.* Rather, she seeks expungement purely as an equitable matter, stating that her conviction is over fourteen years old, she served her time in prison and on supervised release, and her conviction has impacted her employment opportunities. This is clearly insufficient under *Dunegan* and *Rowlands*, as discussed above. *See Dunegan, 251 F.3d at 478; see Rowlands, 451 F.3d at 17-79.*

The Supreme Court has instructed that the doctrine of ancillary jurisdiction may be used "for two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 379-80 (internal citations omitted).

"Expungement of a criminal record solely on equitable grounds, such as to reward a defendant's rehabilitation and commendable post-conviction conduct, does not serve any of those goals." *United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000); *see United States v. Federico-Estevez*, 2021 WL 2936158, No. 11-25 (SDW) (D.N.J. July 13, 2021) (citing to *Sumner*). Further, "the expungement of the record of a valid arrest and conviction usurps the

4

powers that the framers of the Constitution allocated to Congress, the Executive, and the states." *Sumner*, 226 F.3d at 1014. When states have established professional standards that are affected by criminal records, expungement also trenches on their right to regulate employment within their borders. *Id.* [2]

Accordingly, courts routinely reject requests for expungement of arrest or conviction records which are sought based upon the impact of a defendant's criminal history on employability. *See, e.g.*, *Rowlands*, 451 F.3d 173 (rejecting expungement request based upon preclusion from teacher certification); *United States v. Waybright*, 2020 WL 4464476 (N.D., Ala. Aug. 4, 2020) (Coogler, J.) (proliferation of background checks that revealed defendant's history did not warrant expungement of his conviction); (*United States v. Elizalde*, 2017 WL 1438203, at *1 (S.D. Cal. Apr. 24, 2017) (Lorenz, J.) ("Collateral consequences, such as obstacles to pursuing a career in the medical profession, are insufficient to warrant relief [of expunging a federal criminal record.]"); *Doe v. United States*, 168 F. Supp. 3d 427, 429 (E.D.N.Y. 2016) (denying expungement even while recognizing that the petitioner had "struggled considerably" and experienced "unending hardship" in the job market); *United States v. Brooks-Hamilton*, 2015 WL 5680907, at *1 (N.D. Cal. Sept. 28, 2015) (Illston, J.) ("[C]ourts will not expunge criminal records for the sole purpose of avoiding collateral consequences, such as to a defendant's immigration status or employability.").

Courts have followed this approach even where the initial charges were ultimately dismissed. *See, e.g., United States v. Grant*, 2008 WL 2039309, at *1–3 (E.D.N.Y. May 9, 2008)(Sifton, J.) (denying expungement where the petitioner's criminal record erroneously reflected charges for which she had been acquitted

---

[2] In addition to the Third and Ninth Circuits, the First, Sixth, Seventh, and Eighth Circuits hold that a federal court does not have jurisdiction over orders to expunge criminal records based solely on equitable grounds. *See United States v. Coloian,* 480 F.3d 47, 51–52 (1st Cir.2007); *United States v. Lucido,* 612 F.3d 871, 877 (6th Cir. 2010); *United States v. Wahi,* 850 F.3d 296 (7th Cir. 2017)*; United States v. Meyer,* 439 F.3d 855, 856, 861 (8th Cir. 2006). In contrast, the Second, Tenth, and D.C. Circuits have found that federal courts have jurisdiction to expunge based on equitable grounds but that this discretion should only be exercised in extremely limited situations. *See United States v. Schnitzer,* 567 F.2d 536, 539 (2d Cir.1977) (denying request for expungement of rabbinical student's arrest record finding that his concern that he would be asked to explain his arrest did not fall within narrow range of cases where expungement might be appropriate); *United States v. Linn,* 513 F.2d 925, 927 (10th Cir.1975) (finding that courts only have the power to expunge convictions where they were legally infirm or obtained through government conduct, however, courts have a "narrow power" to expunge arrests "in unusually compelling circumstances"); *United States v. Douglas*, 282 F. Supp. 275, 279 (D.C. Cir. 2017) (difficulty that a criminal conviction posed for a criminal defendant seeking employment was not "an extreme circumstance" justifying expungement.)

fourteen years prior and she alleged that her inaccurate criminal record had affected her ability to obtain employment); *United States v. Flagg*, 178 F. Supp. 2d 903, 905 (S.D. Ohio 2001)(Rice, C.J.) (finding that "the rationale for generally refusing to expunge [even] arrest or indictment records is that an arrest or indictment has independent legal significance, insofar as it shows the existence of probable cause to believe that a defendant committed a crime, even when the Government ultimately fails to prove guilt…. As a result, the Government has an important interest in keeping a record of the arrest or indictment.").

In addition to I'lina not challenging the validity of her conviction, she also cites no legal authority demonstrating that the statutes under which she was convicted authorize expungement. *See* I'lina, Crim. No. 02-638, ECF No. 171. While there is no federal statute that generally authorizes the expungement of a legal and valid criminal conviction, *See United States v. Smith*, 940 F.2d 395, 395-96 (9th Cir. 1991); *see also Flagg*, 178 F. Supp. 2d at 905 ("records of valid arrests, indictments or convictions ordinarily may not be expunged"), a small number of statutes specifically authorize the expungement of criminal records under very particular circumstances. *See Smith*, 940 F.2d at 395-96; *see also United States v. Crowell*, 374 F.3d 790, 792-93 (9th Cir. 2004) (listing examples of statutes that expressly permit expungement).

For example, certain individuals who were convicted and sentenced to probation for violating the Controlled Substances Act, 21 U.S.C. § 844, and who were under 21 at the time of the offense, may apply for expungement. *See* 18 U.S.C. § 3607(c). In addition, the now repealed Federal Youth Corrections Act, which permitted youthful offenders who met certain requirements to have their convictions set aside, is another example of a statute that specifically authorizes expungement. *See* 18 U.S.C. § 5021(b) (1972). However, these statutes are wholly inapplicable to the present matter, and the statutes under which I'lina was convicted, *i.e.,* 18 U.S.C. § 371 and 18 U.S.C. § 1591, do not specifically authorize expungement. *See* 18 U.S.C. § 1001; *see also United States v. Kearney,* 2008 WL 2157056, at *1 (E.D. Mich., May 21, 2008) (Cleland, J.) (holding that defendant's conviction under 18 U.S.C. § 1001 could not be expunged, since defendant did not claim his conviction is improper but was merely seeking to remove a "'dark cloud' from his distant past").

Accordingly, because there is no evidence that the underlying criminal proceedings were invalid or illegal or that the specific statute under which I'lina was convicted authorizes the expungement of her criminal convictions, this Court lacks jurisdiction to entertain her petition.

## **CONCLUSION**

      For all the foregoing reasons, I'lina's petition should be dismissed without a hearing.

                    Respectfully submitted,

                    RACHAEL A. HONIG
                    Acting United States Attorney

                    /s/ Leslie F. Schwartz
                    By: LESLIE F. SCHWARTZ
                    Assistant U.S. Attorney

Dated:  July 27, 2021

cc:  Viktoriya I'lina, *pro se* (by regular mail)